MICHAEL F. CLARKE *vs.* FRANKLIN L. FAY & others, trustees.

Suffolk.    January 18, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets.    *Bankruptcy.    Trust. Devise and Legacy.*

In a suit in equity under R. L. c. 159, § 3, cl. 7, to reach and apply to the payment of a debt due to the plaintiff from the principal defendant the interest of that defendant under the will of his grandfather, such defendant's share as one of his father's children in a fund of which his father, who is living, enjoys the income, which will pass to such defendant in case he survives his father but not otherwise, is a present equitable interest, which, although it may be lost by the death of such defendant before the death of his father, is assignable property, the value of which can be ascertained by sale, appraisal or some other means within the ordinary procedure of the court, and which therefore can be reached and applied under the statute.

Under § 70 a (5) of the bankruptcy act of 1898, which provides that the trustee of the estate of a bankrupt shall be vested with the title of the bankrupt to all property which " he could by any means have transferred," the interest of the bankrupt under a will in a fund of which his father, who is living, enjoys the income, and a share of which will pass to the bankrupt in case he survives his father but not otherwise, vests in the trustee.

In a suit in equity under R. L. c. 159, § 3, cl. 7, to reach and apply to the payment of a debt due to the plaintiff from the principal defendant the interest of that defendant under the will of his grandfather, it appeared that that will gave the residue of the testator's property to trustees, and, after providing for certain trusts, directed that all the residue of his estate should be divided into as many equal shares as there should be at the time of his decease children of his then living or deceased leaving issue, and then, after providing for the management of the trust and the payment of its expenses, proceeded as follows: " to pay

over the residue of the income of such share to the child for whose benefit such share is held, . . . for and during the term of such child's natural life and upon such child's death to convey transfer and pay over the principal of the share so held for such child's benefit to such child's lawful issue then living by representation; but if such child shall die without leaving lawful issue living at the time of such child's death then upon such child's death to add the principal of the share held for such child's benefit equally to the shares held for the benefit of my other children then living . . . provided however that the lawful issue then living of any other child of mine who shall have theretofore deceased shall take and have (and there shall be paid and conveyed to such issue) — by right of representation the same part of such principal which would have been added to the share which would have been held for the benefit of such issue's deceased parent if such issue's deceased parent was then living." When the bill was filed the father of the principal defendant was living. That defendant had two unmarried sisters, who as well as he were born before the death of the testator. He had had five aunts who were living at the death of the testator, one of whom had died, leaving issue, one of whom was a childless widow, two of whom were married, each of them having a married son without issue, and one of whom was married and had a minor unmarried son. *Held*, that the interest of the principal defendant in his share of the fund of which his father enjoyed the income, although his enjoyment of it was contingent on his surviving his father, was assignable property which could be reached and applied under the statute, but that his interest in the funds of which the incomes were enjoyed respectively by his aunts, and a part of which would come to him if after his father's death and during his own lifetime any of his aunts should die without leaving issue, was not property but a mere possibility of property, which could not be reached under the statute.

BILL IN EQUITY, filed in the Superior Court on September 3, 1908, under R. L. c. 159, § 3, cl. 7, by a creditor of Franklin L. Fay, seeking to reach and apply to the payment of the debt due to the plaintiff the interest of Franklin L. Fay under the provisions of the will of his grandfather, who also was named Franklin L. Fay.

Upon the suggestion of bankruptcy of the defendant Franklin L. Fay, Rufus B. Sprague, the trustee in bankruptcy of his estate, was admitted as a party defendant.

The case was heard by *Wait*, J., who was of opinion that the defendant Franklin L. Fay had an interest which could be reached by his creditors and which passed to his trustee in bankruptcy, and made a final decree directing that the interest of the defendant Franklin L. Fay in the estate of his grandfather Franklin L. Fay should be sold and that the proceeds should be applied, first to the payment of the costs and expenses of the sale, second to the satisfaction of the plaintiff's claim, which was $414.35, with interest to the date of the sale

and the costs of suit, and third that any balance remaining should be paid to the trustee in bankruptcy. The defendant Franklin L. Fay appealed.

*G. C. Dickson*, for the defendant Franklin L. Fay.

*R. B. Sprague*, trustee in bankruptcy, *pro se*.

*C. F. Eldredge*, for the plaintiff.

RUGG, J.  This is a bill in equity brought by a creditor of Franklin L. Fay to reach and apply his interest under the will of his grandfather, Franklin L. Fay, toward the payment of the plaintiff's debt.  More than four months after the filing of the bill the defendant was adjudicated a bankrupt, and his trustee has become a party hereto.  The testator at his death in 1885 left five daughters and one son, the latter being the father of the defendant.  The will created certain trusts for the benefit of the widow and a brother of the testator during their several lives, the other provisions of the will being subject to these life interests.  The general scheme of the other provisions is in substance as follows: All the remainder of the estate is left in trust for the testator's children for life, they to receive the income, and upon the death of any of the testator's children leaving issue then living the issue is to take the parent's share, and if any of the children die before the testator, leaving issue living at his death, such issue shall take its parent's share, and if such issue is a minor the share is to remain in trust until such minor reaches majority.  Upon the death of any of the testator's children his or her share is to go to the issue then living.  If any of the testator's children shall die leaving no issue living, then his or her share is to fall in for the benefit of the other living children of the testator, provided that the lawful issue then living of any other child, who shall have theretofore deceased, shall take and have the same part of such principal which would have been added to the share which would have been held for the benefit of the deceased parent of any such issue if then living.  But in the event of all of the testator's children dying and leaving no issue living, then to the testator's brothers and sisters then living, the issue then living of a deceased brother or sister to take its parent's share, and in the event of the failure of all these then to the testator's heirs at law.  The precise language of the will, so far as it describes the interest of the

defendant, after providing for the trust for life for the benefit of the defendant's father and aunts, who were the children of the testator, is that the trustees are "upon such child's [that is, child of the testator] death to convey transfer and pay over the principal of the share so held for such child's benefit to such child's lawful issue then living by representation; but if such child shall die without leaving lawful issue living at the time of such child's death then upon such child's death to add the principal of the share held for such child's benefit equally to the shares held for the benefit of my other children then living; . . . provided however that the lawful issue then living of any other child of mine who shall have theretofore deceased shall take and have . . . by right of representation the same part of such principal which would have been added to the share which would have been held for the benefit of such issue's deceased parent if such issue's deceased parent was then living." The defendant is married but has no children. He has two unmarried sisters, who, as well as himself, were born before the decease of the testator, and his father is still living. Of his five aunts, who survived the testator, one has since deceased leaving two unmarried minor daughters, one is a childless widow, two are married each having a married son without issue, and one is married having a minor unmarried son.

The question is whether the interest of the defendant in the estate of his grandfather can be attached and sold for the plaintiff's debt, and whether any excess passes to his trustee in bankruptcy. There can be no doubt that the direction to the trustees upon the death of each of the testator's children, including the defendant's father, to convey the share held for such child's benefit to "such child's lawful issue then living by right of representation" created a contingent interest. The words "then living" must refer to the death of the child and not of the testator. Whether the defendant will ever take anything under this provision depends upon the contingency of his surviving his father. It is wholly uncertain whether this event will ever happen.*

But this determination is not decisive of the ultimate question

---

* *Hulburt* v. *Emerson*, 16 Mass. 241. *Olney* v. *Hull*, 21 Pick. 311. *Thomson* v. *Ludington*, 104 Mass. 193. *Butterfield* v. *Hamant*, 105 Mass. 338. *Bamforth* v. *Bamforth*, 123 Mass. 280. *Smith* v. *Rice*, 130 Mass. 441. *Denny*

in the case. A closer analysis of the will is necessary to ascertain with precision the interests which it creates for the benefit of the defendant. The interest which he has in the share, of which his father enjoys the income during life, is contingent upon his surviving his father, and upon that alone. This interest may be treated as a unit. It may in fact be larger or smaller, dependent upon the decease of one or more of his aunts without leaving surviving issue before the decease of his father, and also in some degree upon whether either or both of his sisters predecease him without leaving surviving issue and also upon whether other brothers or sisters may be born and survive his father, but these are considerations which concern only the amount, and not the fact of his interest. His realization in actual possession of this unit, whatever its size may finally turn out to be, depends upon the single contingency that he survive his father. But he has another and independent beneficial possibility under the will; namely, that during his life one or more of his aunts may survive his father and die without leaving lawful issue then surviving them. In such an event he will share, with the other then living issue of his father, the portion of which his father would have received the income during his life, had he survived. The reduction to possession by the defendant of this possible benefit is more contingent than that first described for the reason that it depends not only upon his outliving his father, but upon the further uncertainties that he outlive the aunt, and that she survive his father and then decease without leaving lawful issue then surviving her.

The point presented for decision is whether either of these

v. *Kettell*, 135 Mass. 138. *Colby* v. *Duncan*, 139 Mass. 398. *Wood* v. *Bullard*, 151 Mass. 324, 333. *Harding* v. *Harding*, 174 Mass. 268. *Cronan* v. *Adams*, 185 Mass. 436. *Gardiner* v. *Savage*, 182 Mass. 521. *Crapo* v. *Price*, 190 Mass. 317. *Bigelow* v. *Clap*, 166 Mass. 88. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35. *Hale* v. *Hobson*, 167 Mass. 397. *Coveny* v. *McLaughlin*, 148 Mass. 576. *Galladay* v. *Knock*, 235 Ill. 412. *Lawrence* v. *Phillips*, 186 Mass. 320. *Jones* v. *Jones*, [1906] 1 Ch. 570. *Dary* v. *Grau*, 190 Mass. 482. *Jackson* v. *Jackson*, 153 Mass. 374. *Morrill* v. *Phillips*, 142 Mass. 240. *McCreary* v. *Coggeshall*, 74 S. C. 42. *Fisher* v. *Wagner*, 109 Md. 243. *Reichard's appeal*, 116 Penn. St. 232. *Young* v. *Young*, 97 N. C. 132. *Darnell* v. *Barton*, 75 Ga. 377. *Teets* v. *Weise*, 18 Vroom, 154. *Howbert* v. *Cauthorn*, 100 Va. 649. *Hopkins* v. *Keazer*, 89 Maine, 347, 356. See *Lehndorf* v. *Cope*, 122 Ill. 317, 331.

interests is of such a nature that it can be reached by a creditor's bill under R. L. c 159, § 3, cl. 7.　We consider first his interest in the share of which his father enjoys the income during his life. As the question is one of nicety and difficulty, it will be helpful to review some of our cases.

In *Gardner* v. *Hooper*, 3 Gray, 398, the will under consideration, after creating a life estate, provided that at its determination the executor should divide the estate into fifths, and pay one share to each of the testator's five children, and then proceeded: "But should any of my children die before my wife, leaving issue living at the time of her decease, I give to such issue the share which the parent would have had, if living. And if any should die before my wife, and without issue living at the time of her decease, I give the share of such to be equally divided, one part to each of my children who may then be living, and one part to the issue of each that may not be living." The question was as to the right of one of the daughters during the life of the testator's widow, and it was held that, although the gift was so far contingent that if she failed to survive the widow it would not come to her, yet such a right was not a mere possibility but an existing interest, which, though in a certain sense contingent, would pass to an assignee in insolvency. In *Nash* v. *Nash*, 12 Allen, 345, the will provided that at the termination of a life estate the property should go " to such of my children as may be then living." It was held that during the life of the life tenant the interest of one of the children, although contingent and not vested during her life, was something more than a mere possibility and would pass to an assignee in insolvency.　In *Dunn* v. *Sargent*, 101 Mass. 336, a life estate was created for the benefit of a son with remainder to his children and remainder over to such of the life tenant's brothers and sisters as might survive him. It was held that the right of a brother of the life tenant, although not devisable nor transmissible, was assignable and capable of alienation, subject to the contingency, because although not vested in possession and subject to be defeated by death before the life tenant, yet it was vested in right. The testator in the will under consideration in *Belcher* v. *Burnett*, 126 Mass. 230, after creating a life tenancy, directed real estate " to be equally divided among all my grand-

children who shall be living" at the decease of the survivor of the life tenants. It was said that though this was a contingent remainder, which would not vest in possession until and unless the grandchild survived the life tenants, yet it was " vested in . . . right from the death of the testatrix, capable of alienation . . . and . . . such an interest as would pass to an assignee under the insolvent law of the Commonwealth, or under the United States bankrupt act of 1841." *Whipple* v. *Fairchild*, 139 Mass. 262, interpreted a deed of trust, which created a life estate with power of appointment and directed a conveyance, in default of the exercise of the power, to the heirs of the grantor. It was held that each of the children of the grantor took " an equitable interest, which, although it might be defeated by the contingency, either of his death before the father, or of the father's conveying under the power, was assignable by him." In *Wainwright* v. *Sawyer*, 150 Mass. 168, the will created a life estate with power of alienation, and then provided that when the youngest of several children reached the age of twenty-one years certain property should be divided equally among the children then living. It was held that the interest thereby created in a child before the time of distribution was not a mere possibility, but a fixed right liable to be defeated only by death or alienation before the time for distribution, and that such an interest was assignable. In *Alexander* v. *McPeck*, 189 Mass. 34, the court after construing the will to mean that it gave to the legatee a right to the fund provided he survived the life tenant and a right under other circumstances to have it administered as a part of his estate, said : " Each of these rights is contingent, the first upon his surviving the widow, the second upon his dying before her and leaving no issue surviving her, and the third upon his having no issue living at the time of his death. His interest in each right is now vested in the sense that he owns the right. If in their nature they are property, they are his property. There can be no doubt that although each is a vested right in an equitable contingent remainder, it is capable of being alienated by him and of passing by assignment in insolvency or bankruptcy. . . . Such a right is property." In *Putnam* v. *Story*, 132 Mass. 205, a life estate was created for the benefit of a daughter of the tes-

tator, and the will then provided that " at her decease the capital sum to be equally divided among the heirs of my said daughter." It was held that children of the daughter during her life each took an interest in the nature of a contingent remainder liable to be defeated by failure to survive the parent, but that a vested interest in a contingent remainder was taken and that this contingency did not prevent the vesting of a right transferable in its nature, which could be assigned and would pass to assignees in bankruptcy or insolvency. The rule laid down by Chancellor Walworth in *Moore* v. *Lyons*, 25 Wend. 119, was quoted with approval, which has also been adopted in *McArthur* v. *Scott*, 113 U. S. 340, 379, to wit, "where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession."

The facts and the language interpreted in these cases make them indistinguishable from the one now under consideration. The principles laid down govern the determination of the rights of the defendant in the trust fund of which his father receives the income. He was in being at the time the will became effective by the death of the testator. He was the issue of his father and could by no contingency be deprived of the certainty of sharing in the fund, provided he was alive at the death of his father. He was ascertained as the person who must inevitably take under the devise, provided he lived, and although the amount of this share may be augmented by the death of one or more of his aunts without issue during the life of his father and may be diminished or increased by the birth or death of brothers and sisters he can under no circumstances be deposed or ousted by any other person or class. The legacy to him took effect in a fixed right which must ultimately ripen into an absolute title coupled with possession unless defeated by his death before that of his father. To use the language of our cases, this is something more than a mere possibility, and was a "vested interest

in a contingent" right. It is property, and is such an interest as could be assigned.*

It remains to inquire whether its value "can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court," within the meaning of those words as used in R. L. c. 159, § 3, cl. 7. *Alexander* v. *McPeck,* 189 Mass. 34, and *Biggert* v. *Straub,* 193 Mass. 77, seem decisive on this point in favor of the petitioners. See also *Heath* v. *Widgeon,* [1907] 2 Ch. 270.

The further inquiry remains whether an interest of this description passes to the trustee in bankruptcy of the defendant. That it would have passed to the assignee in insolvency or bankruptcy under our insolvent laws and early United States bankruptcy acts has been expressly decided. *Gardner* v. *Hooper,* 3 Gray, 398. *Nash* v. *Nash,* 12 Allen, 345. *Belcher* v. *Burnett,* 126 Mass. 230. *Putnam* v. *Story,* 132 Mass. 205. Such seems to be the law of New York. *Smith* v. *Scholtz,* 68 N. Y. 41, 61. It is clear that it would pass under the English bankruptcy act. *Higden* v. *Williamson,* 3 P. Wms. 132. Robson, Bankruptcy, (6th ed.) 459. *Davidson* v. *Chalmers,* 33 Beav. 653. *Hensley* v. *Wills,* 16 L. T. (N. S.) 582. There is nothing in the present bankruptcy act to call for a different result. U. S. St. July 1, 1898, c. 541, in § 70 a (5) provides that the trustee shall be vested with the title of the bankrupt to "property which . . . he could by any means have transferred." This language by its plain terms covers an interest like that of the defendant in the share of which his father has the income during life. Some decisions of federal circuit or district courts appear to be in conflict upon this subject.† But it is not necessary to review or analyze them for the reason that they have

---

* *Minot* v. *Purrington,* 190 Mass. 336, 339. *Huntress* v. *Allen,* 195 Mass. 226. *Dodd* v. *Winship,* 144 Mass. 461. *Butterfield* v. *Reed,* 160 Mass. 361. *Cummings* v. *Stearns,* 161 Mass. 506. *Shaw* v. *Eckley,* 169 Mass. 119. *Gilkie* v. *Marsh,* 186 Mass. 336. *Hills* v. *Barnard,* 152 Mass. 67. *Scott* v. *West,* 63 Wis. 529, 573. *Welsh* v. *Woodbury,* 144 Mass. 542. *Merriam* v. *Simonds,* 121 Mass. 198, 202. *Minot* v. *Tappan,* 122 Mass. 535.

† *In re Hoadley,* 101 Fed. Rep. 233. *In re Ehle,* 109 Fed. Rep. 625. *In re St. John,* 105 Fed. Rep. 234. *In re Wetmore,* 108 Fed. Rep. 520. *In re Twaddell,* 110 Fed. Rep. 145. *In re Gardner,* 106 Fed. Rep. 670. *In re McCrea,* 161 Fed. Rep. 246.

been based upon State statutes or judgments in some instances differing from our own.

This opinion thus far relates to that portion of the testator's estate which may come to the defendant under that part of the will which gives to him upon the death of his father the principal of the share held for the benefit of the latter during his life. But the will contains the further provision, which may inure to the advantage of the defendant, to the effect that if, after his father's death, any of his surviving aunts deceases without leaving issue her surviving, the share held for the benefit of such aunt shall be divided among the shares held for her living sisters, the then living issue of any deceased brother or sister taking, by right of representation, the part thereof which would have been added to the share held for the deceased parent of such issue, if living. The interest of the defendant under this provision is contingent in every respect. The defendant belongs to a class removed to the third degree from the possibility of financial advantage from this source. Whether such aunt may leave issue surviving her cannot be determined with certainty until her death. Whether she will survive the defendant's father is conjectural, and whether the defendant will be alive at her death is equally matter of speculation. Any one of these contingencies happening adversely will defeat the hope of his reaping gain under this provision. It is not an interest in any respect vested in him, and amounts to a mere possibility. Hence it cannot be reached by a creditor's bill nor pass to his trustee in bankruptcy. As was said by Morton, C. J., in *Putnam v. Story*, 132 Mass. 205, at p. 210 : " In the case of a devise or bequest to a man for life and at his death to his heirs, it is true that, if he has no children at the death of the testator, his heirs presumptive would not take a vested interest, because there is the contingency that they may be supplanted or displaced as heirs presumptive by the birth of children to the life tenant, and therefore that they may never take at all, even if they survive the life tenant." *Putnam* v. *Gleason*, 99 Mass. 454. *Lavery* v. *Egan*, 143 Mass. 389.

The decree is to be so modified as to clearly exclude from the sale of the defendant's interest in the estate of his grandfather, the possibility that he may directly receive some portion of a

share held for the benefit of each of his aunts, and as modified
is affirmed.

*So ordered.*