JOSEPH W. HANSON *vs.* ADELINE W. GRISWOLD & others.

Suffolk.   January 18, 1915. — May 21, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To enjoin foreclosure of mortgage, Declaratory decree. *Equity Pleading and Practice,* Decree. *Deed,* Delivery. *Estoppel.*

In a suit in equity to enjoin the foreclosure of a mortgage of real estate, a contention of the plaintiff, that the mortgage whose foreclosure he seeks to enjoin never was delivered, is not supported by the evidence, where it appears that, although certain of the mortgagees did not know until long after the mortgage was made that it had been taken in their behalf, yet the beneficial owner of the property, who was one of two trustees that were named as mortgagees, had authority to act to accept the mortgage both as trustee and as the agent of the other mortgagees and accepted it for all.

In a suit to enjoin the foreclosure of a mortgage of real estate, where it appears that the former beneficial owner of the land, who as agent had procured the execution of the mortgage to the defendants, afterwards caused the land to be conveyed to the predecessor in title of the plaintiff, representing that he had authority to cause it to be so conveyed and that no such mortgage had been made, this misrepresentation does not estop the defendants from proceeding with the foreclosure of their mortgage, if it further appears that the plaintiff's predecessor in title when he accepted the conveyance thought that he was dealing only with the beneficial owner as an individual and dealt solely with him.

In a suit to enjoin the foreclosure of a mortgage of real estate, where the plaintiff, besides praying for an injunction, had added to his bill a prayer that an underlying mortgage, which had been discharged upon a conveyance of the land to the predecessor in title of the plaintiff with a representation that there was no such mortgage as that to the defendant, might be revived in favor of the

plaintiff, it was *held*, that the additional prayer in effect asked the court to make a declaratory decree stating that the release of the underlying mortgage operated as an assignment of that mortgage and that the rights of the assignee had come to the plaintiff, that on the bill to enjoin the foreclosure of the junior mortgage no relief founded on such a declaration could be granted, and that a court of equity has no jurisdiction to make a declaratory decree on which no relief can be based.

LORING, J.  This is a bill in equity to enjoin the foreclosure of a mortgage.  The case is here on a report.*  From the report it appears that on March 4, 1902, a mortgage was executed by James Walker on a lot of land on Rutland Square in Boston on which the Hotel Exeter was erected.  The mortgagees were Adeline W. Griswold, William E. Stowe and Henry L. Morse, (trustees of the estate of William F. Homer,) and Mary D. Stowe. The mortgage secured three notes signed by the grantor, one to Mrs. Griswold for $5,800, a second to Stowe and Morse (trustees as aforesaid) for $2,500, and a third to Mrs. Stowe for $1,500. James Walker was a man of straw.  The real owner of the mort-gaged property at that time was William E. Stowe.  William E. Stowe acquired title in the name of Walker to the land on which the Exeter was erected (hereinafter spoken of as parcel A) and to a small lot adjoining it (hereinafter called parcel B) by a deed from Thomas G. Washburn dated March 1, 1902, and recorded March 3, 1902.  The mortgage here in question was dated March 4, 1902, and recorded March 6, 1902.  At this time Stowe was acting as attorney for Mrs. Griswold and for Mrs. Stowe. At the time of the trial Stowe was dead and Washburn (who testified as a witness) did not have a clear recollection of the transaction.

It would seem from the facts stated in the report that Stowe acquired title to lots A and B (which he had put in the name of Walker) by a conveyance of two parcels of land, one on Ward Street in Newton and the other on Irvington Street in Waban. The land on Ward Street in Newton was owned by Mrs. Stowe and by William E. Stowe and Morse (trustees as aforesaid) in the proportions of $1,500 and $2,500.  Just what interest Mrs. Gris-wold had in the Waban property is not very clear, but the judge found "that William E. Stowe, acting for Adeline W. Griswold,

* Made by *Fessenden*, J.

had received $4,000 on the sale of property on Irvington Street, Waban, on which she originally had a mortgage for $5,500, and that Stowe intended to secure Mrs. Griswold for what she had parted with by the mortgage in question on Hotel Exeter." The finding in effect is a finding that Stowe, thinking himself under obligations to Mrs. Griswold to the extent of $5,800, and using the property of Mrs. Stowe and that owned by himself and Morse as trustees in acquiring parcels A and B from Washburn, had caused Walker to execute the mortgage here in question to secure notes for the amounts to which the three persons named were entitled.   The judge further found "if the evidence justifies it," that Stowe kept the title of the Exeter in the name of Walker "in order to protect himself for sums which he had paid out of his own pocket to preserve the properties of the" mortgagees.   He made this further finding: "It did not appear that any of the mortgagees other than William E. Stowe knew at the time of the transaction or thereafter that said Stowe had taken such a mortgage on their behalf until Mr. Norcross, attorney for Mrs. Griswold, learned of the existence of the same."   The son of Mr. Stowe, one of the defendants in this case who succeeded his father as trustee under the will of William F. Homer, testified that "he did not find the Walker mortgage or mortgage notes among his father's papers at his death."   No demand ever was made on Walker for payment of the note during his lifetime, nor was any claim ever made on the estate of Walker, who since has deceased and on whose estate an administrator was appointed.   On March 11, 1903, (that is to say, about a year after the execution of the mortgage) Mrs. Griswold revoked her power of attorney to Stowe and appointed Otis Norcross and Grenville H. Norcross as her attorneys in his place.   Otis Norcross testified that "he had never seen the original Walker mortgage or notes."   He further testified that in 1903, when he took over the affairs of Mrs. Griswold, he had the Hotel Exeter appraised by experts, and that, acting on their report, he decided that the mortgage here in question was worthless, and that he continued of that opinion until shortly before the present foreclosure proceedings were begun.   When parcels A and B were conveyed by Washburn to Walker they were subject to a first mortgage to a savings bank for $20,000 and a second mortgage to S. L. Whipple, Esquire, originally for $8,000

but then reduced to $5,000. In September, 1904, Washburn (who conveyed parcels A and B to Walker), acting for the second mortgagee, Whipple, threatened to foreclose the second mortgage. Washburn testified and the judge found that Stowe told Washburn that he would convey the Hotel Exeter back to him (Washburn) to save the trouble of foreclosure proceedings, and that, in answer to a question then put to him by Washburn, Stowe said that the title was then the same as at the time of the conveyance from Washburn to Walker in 1902, and that no other incumbrance had been put on the premises. Pursuant to this arrangement Walker, on September 13, 1904, conveyed parcel A to Washburn. In that connection the judge made this finding: "I find that on the occasion when he [Washburn] sold the property to Stowe in 1902 title being taken in Walker's name and when he received the title back in 1904 he thought that he was dealing with William E. Stowe as an individual." The judge further found that this misrepresentation made by Stowe was relied upon by Washburn in taking the reconveyance from Walker in place of foreclosing the Whipple mortgage.

The judge found that Mrs. Griswold, by any act of her own, had not released, discharged or parted with the security she obtained by virtue of the mortgage from Walker, and that Stowe had no power or authority to act for her after March 11, 1903, but that Mrs. Griswold or her attorney Norcross knew in 1903 that Stowe was managing the Hotel Exeter as a building, and was endeavoring to effect a sale of it. He further found that Mrs. Stowe had not released, discharged or parted with the security she obtained by virtue of the mortgage, by any act of her own. He added: "There is no evidence of the extent of William E. Stowe's authority to act for her [Mrs. Stowe] or that such authority was ever terminated prior to her death September 16, 1904."

On June 14, 1905, Washburn, "in ignorance of the existence of the mortgage in suit," paid to Whipple the second mortgage note originally made by him, and thereupon that mortgage was discharged and released and the discharge and release were recorded on July 19, 1905. Later, $5,000 of the $20,000 secured by the first mortgage was paid by "some one or more of the plaintiff's predecessors in title." Since the deed from Walker to Washburn there have been five transfers and four mortgages of parcels

A and B. The plaintiff is the owner by an unrecorded deed from the last of the five grantees mentioned above.

The bill of complaint alleges that the defendants Adeline W. Griswold (one of the original mortgagees), Griswold Stowe (now trustee under the will of William F. Homer), and Ellen G. Stowe (executrix of the will of Mary D. Stowe) have advertised parcel A for sale under the power of sale contained in the mortgage given by Walker to Mrs. Griswold and to Stowe and Morse, trustees, and to Mrs. Stowe, to secure the several sums of $5,800, $2,500 and $1,500. In consequence of the institution of these foreclosure proceedings the bill of complaint here in question was filed.

The first ground on which the plaintiff contends that he is entitled to have the foreclosure proceedings enjoined is that the so called mortgage which the defendants are attempting to foreclose never was intended as a mortgage, but was an instrument put on record to hide Stowe's ownership of the property. But the judge found that this instrument "was what it purported to be and was intended by William E. Stowe individually and as agent and trustee, and by James Walker, to be a mortgage securing definite sums, namely, the interests of the respective persons for whom he acted, as stated in the mortgage." We are of opinion that this finding was justified by the evidence set forth in the report and not only that, but on that evidence that it was correct. That disposes of the first contention.

The second contention of the plaintiff is that there was no evidence of delivery of the mortgage deed. This contention is based on the finding that "it did not appear that any of the mortgagees other than William E. Stowe knew at the time of the transaction or thereafter that said Stowe had taken such a mortgage on their behalf until Mr. Norcross, attorney for Mrs. Griswold, learned of the existence of the same." But under the findings of the judge, Stowe, as attorney for Mrs. Griswold and for Mrs. Stowe, had authority to accept the mortgage so far as they were concerned, and as trustee under the will of William F. Homer he had authority to accept it so far as he and his fellow trustee Morse were concerned. Under these circumstances there is nothing in the cases of *Barnes* v. *Barnes*, 161 Mass. 381, *Meigs* v. *Dexter*, 172 Mass. 217, *Loring* v. *Hildreth*, 170 Mass. 328, *Gilson* v.

*Gilson,* 2 Allen, 115, or *Burnett* v. *Pratt,* 22 Pick. 556, which affects this question.

The next contention of the plaintiff is that the defendants are estopped from asserting their rights under the mortgage because of the misrepresentation made by Stowe when Washburn, their predecessor in title, accepted a reconveyance from Stowe in place of foreclosing the Whipple mortgage. But it was found by the judge that "on the occasion when he [Washburn] sold the property to Stowe in 1902 title being taken in Walker's name and when he received the title back in 1904 he thought that he was dealing with William E. Stowe as an individual," and further, "that Washburn dealt solely with Stowe in procuring this deed" in place of foreclosing the Whipple mortgage. The representation therefore was made by Stowe in his own behalf, not in behalf of himself as trustee under the will of Mr. Homer, or in behalf of the 'two individual mortgagees Mrs. Griswold and Mrs. Stowe. In that respect the case is different from *Nickerson* v. *Massachusetts Title Ins. Co.* 178 Mass. 308, relied upon by the plaintiff.

It follows from what has been said that the plaintiff is not entitled to have the defendants enjoined from proceeding with the foreclosure sale which they have begun.

In addition to the prayer for an injunction restraining the foreclosure sale, the plaintiff inserted in his bill of complaint the following prayer: "That it be decreed that the mortgage formerly held by said Whipple and which was discharged by reason of the representations of said William E. Stowe and the said James Walker as aforesaid, be revived in favor of the said plaintiff to take precedence over the mortgage now held by the said defendants." The plaintiff's contention on this prayer for relief is that under the circumstances under which it was executed the release of the Whipple mortgage will be treated in equity as an assignment and not as a release. If that be so, and if it be true that the plaintiff has succeeded to Washburn's right to have the release of the Whipple mortgage stand as an assignment of it, the plaintiff's remedy is to foreclose that mortgage as the assignee of it. Whether he has a right to foreclose that mortgage as the assignee of it is not in issue in this suit. What the plaintiff (by the additional prayer set forth above) in effect asks the court to do is to enter a

declaratory decree stating that the release of the Whipple mortgage operated as an assignment of that mortgage and that that mortgage now has come to the plaintiff. But on this bill no relief can be granted to the plaintiff on that declaration of his rights, if he is entitled to it. Where all that is sought by a plaintiff is a declaratory decree not the subject of relief to be based upon it, there is no jurisdiction in equity and the bill must be dismissed. To that effect see *Baylies* v. *Payson,* 5 Allen, 473. In *Baylies* v. *Payson* relief could be given upon the declaration of rights which the plaintiff sought, and for that reason, and that reason alone, the bill was retained, although no prayer for relief had been inserted in the bill. See also in this connection *Price* v. *Minot,* 107 Mass. 49.

Whether a bill can be framed on which some relief can be given to the plaintiff in respect to the Whipple mortgage is not a matter now before the court. So far as the present bill relates to the Whipple mortgage it should be dismissed without prejudice, and so far as the rest of the bill is concerned it must be dismissed on the merits. It is

*So ordered.*

*C. N. Barney,* (*H. A. Murphy* with him,) for the plaintiff.
*R. Homans,* for the defendants.