# United States Court of Appeals
## For the First Circuit

Nos. 18-2191
     19-1095

HARRY DE PRINS,

Plaintiff, Appellee,

v.

MICHAEL J. MICHAELES, Trustee of the Donald Belanger Irrevocable
Trust dated October 28, 2008; DONALD BELANGER IRREVOCABLE TRUST
DATED OCTOBER 28, 2008,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Michael J. Rossi, with whom Conn Kavanaugh Rosenthal Peisch
& Ford LLP was on brief, for appellants.
     J. Mark Dickison, with whom Ryan A. Ciporkin, Laura S. Sawyer,
and Lawson & Weitzen, LLP, were on brief, for appellee.

November 15, 2019

**LYNCH**, **Circuit Judge**. This is an important case about Massachusetts trust law which we think is better answered by the Massachusetts Supreme Judicial Court (SJC). Accordingly, we certify to the SJC under its Rule 1:03 an unresolved question under both state common law and state statutes concerning whether a judgment creditor of the settlor's estate may reach and apply assets in an irrevocable spendthrift trust after the death of the self-settlor of the trust.

                                    I.

Harry De Prins brought this reach and apply action against a Massachusetts spendthrift trust created by his parents' murderer, Donald Belanger, to enforce an Arizona wrongful death judgment against Belanger's estate. The parties do not dispute the relevant facts, which we draw from the record.

In 2000, Donald and Ellen Belanger moved from Massachusetts to Arizona. In 2005, their neighbors Armand and Simonne De Prins filed a lawsuit against the Belangers and others over shared water rights. In 2007, the De Prinses obtained a monetary judgment against the Belangers.

In June 2008, the Belangers moved from Arizona to California. Ellen Belanger committed suicide there on October 4, 2008, distressed at least in part about the loss of the lawsuit. Immediately after Ellen Belanger's death, the Belangers' daughter,

Christina Clark, drove to California and convinced her father to return to Arizona with her.

One week after his wife's suicide, Donald Belanger contacted his attorney, Michael J. Michaeles, about creating an irrevocable trust. On October 28, 2008, Belanger created the Donald A. Belanger Irrevocable Trust Dated October 28, 2008 ("the Trust"), a self-settled trust that named Michaeles as its sole trustee and Belanger himself as its sole beneficiary during his life. The Trust provided that Clark would become the sole beneficiary after Belanger's death. It also contained a spendthrift clause and provided that Belanger could not "alter, amend, revoke, or terminate" the Trust. Belanger signed the Trust on November 3, 2008, and conveyed substantially all of his assets to Michaeles as trustee.

Four months after he signed the Trust, on March 2, 2009, Belanger shot and killed Armand and Simonne De Prins in a Walmart parking lot in Show Low, Arizona. The next morning, police stopped Belanger on Interstate 25 in New Mexico. Before the officer approached Belanger's car, Belanger shot and killed himself.

Michaeles, who was already the trustee of the Trust, then became personal representative of Belanger's estate, which he probated in Arizona.

On June 10, 2010, the De Prinses' son, Harry De Prins ("De Prins"), brought a wrongful death action in Arizona state

- 3 -

court against Michaeles as personal representative of Belanger's estate. That action was removed to the U.S. District Court for the District of Arizona.

In November 2014, De Prins commenced this separate reach and apply action in the Arizona federal district court against the Trust and Michaeles as its trustee, having learned of the Trust through the wrongful death litigation. In July 2015, De Prins settled the wrongful death action against the estate with Michaeles as personal representative of the estate for $750,000. The judgment entered in the probate action of Belanger's estate stipulated that collection of De Prins's consent judgment against the estate would be exclusively against the Trust and that the reach and apply action against the Trust would be transferred to the U.S. District Court for the District of Massachusetts. The operative amended complaint in this action states a single claim to reach and apply the Trust's assets to satisfy De Prins's $750,000 wrongful death judgment against Belanger's estate.

After cross-motions for summary judgment, the district court entered judgment for De Prins, holding that he had satisfied the three elements for a reach and apply action required by Massachusetts law. De Prins v. Michaeles, 342 F. Supp. 3d 199, 205 (D. Mass. 2018). The district court also held that, under Massachusetts law, a self-settled trust cannot be used to shield one's assets from creditors, even where the trust has a spendthrift

- 4 -

provision and the trustee had made no distributions to the settlor prior to his death.  Id. at 206.

Michaeles timely appealed.

II.

Since we dispose of some preliminary questions by affirming summary judgment as to those questions, we review those grants of summary judgment de novo, and do so by "'scrutiniz[ing] the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences.'"  Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 27 (1st Cir. 2019) (alteration in original) (quoting Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015)), reh'g denied, 931 F.3d 100 (1st Cir. 2019).

A.   Statute of Limitations

We describe and dispose of the Trust's statute of limitations defense.  We do not certify any limitation issues to the SJC.

Michaeles argues that De Prins's reach and apply action is time-barred by Massachusetts's one-year statute of limitations for claims by creditors of the deceased against estates or trusts. Mass. Gen. Laws ch. 190B, § 3-803(a), (b).  But that statute plainly does not apply to this action.

It is quite clear that Arizona law provides the choice-of-law rules applicable to this action, which was brought in

Arizona. See Ferens v. John Deere Co., 494 U.S. 516, 523 (1990) ("A transfer under § 1404(a) . . . does not change the law applicable to a diversity case."); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (requiring federal courts sitting in diversity to apply the choice-of-law rules of the forum state). Arizona follows the Restatement (Second) of Conflicts of Laws, applying to a given legal question the law of "the state that has the most significant relationship to the issue." Pounders v. Enserch E & C, Inc., 306 P.3d 9, 14 (Ariz. 2013).

Arizona has the most significant relationship to this question, given that Belanger executed the Trust in Arizona, Belanger and both De Prinses were Arizona residents when they died, Belanger murdered the De Prinses in Arizona, and Belanger's estate was probated in Arizona. The Trust's provision that it is governed by Massachusetts law does not determine which statute of limitations governs this action. The Trust states that it "shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, and [that] its validity and administration shall be governed by the laws of the Commonwealth of Massachusetts." The question of which statute of limitations to apply thus falls outside the categories of disputes covered by the limited choice-of-law provision. Michaeles cites no Arizona statute of limitations that would bar this action. The only Arizona statute he cites by its terms does not apply to this suit as it applies

only to "claims against a decedent's estate," which this reach and apply action is not. See Ariz. Rev. Stat. Ann. § 14-3803(A)(1).[1] We conclude the reach and apply action is not time barred.

## B.   Collateral Estoppel

We also rule against De Prins's collateral estoppel argument and do not certify this issue to the SJC.

De Prins argues that Michaeles is collaterally estopped from arguing that De Prins may not reach the Trust because of the final judgment in the underlying wrongful death action, which included a stipulation that the judgment could only be enforced against the Trust's assets.

This argument has no merit. Collateral estoppel applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982); see also Commonwealth v. Two Parcels of Land, 724 N.E.2d 739, 743–44 (Mass. App. Ct. 2000); Indus. Park Corp. v. U.S.I.F. Palo Verde Corp., 547 P.2d 56, 61 (Ariz. Ct. App. 1976). "There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular

---

[1]    Michaeles also argues that the district court was wrong to hold that the twenty-year period found in Mass. Gen. Laws ch. 260, § 20 was the applicable statute of limitations. Because Massachusetts law does not govern the timeliness of this action, this question is irrelevant.

action," so we generally err on the side of <u>not</u> finding an issue precluded when it is not clear that it was fully litigated.  <u>See</u> Restatement (Second) of Judgments § 27 cmt. e; <u>Two Parcels of Land</u>, 724 N.E.2d at 744 (explaining that to apply collateral estoppel "the court must . . . find that the party to be estopped had a 'full and fair opportunity to litigate the issue in the first action'" (quoting <u>Brunson</u> v. <u>Wall</u>, 541 N.E.2d 338, 341 (Mass. 1989))).  For that reason, stipulations and consent judgments are not usually preclusive.  Restatement (Second) of Judgments § 27 cmt. e ("In the case of a judgment entered by . . . consent, . . . none of the issues is actually litigated.").  Instead, they are preclusive only on issues for which the parties clearly intended that result.  <u>Id.</u> ("A stipulation may . . . be binding in a subsequent action between the parties if the parties have manifested an intention to that effect."); <u>see also</u> <u>Chaney Bldg. Co.</u> v. <u>City of Tucson</u>, 716 P.2d 28, 30 (Ariz. 1986) ("Because the issues involved in the . . . dispute were never actually litigated, one of the prerequisites to giving a judgment collateral estoppel effect is patently absent.  Nothing is adjudicated between parties to a stipulated dismissal.").

Here the parties stipulated that "collection of [the] judgment would be exclusively against the Decedent's irrevocable trust . . . ."  There is no indication from that language that the parties intended the agreement to be binding on the issue of De

Prins's ability to reach and apply trust assets and income. Instead, they simply stipulated that the reach and apply action against the Trust would be De Prins's sole avenue for collection. Put another way, the agreement was that De Prins would not attempt to collect anything further from the estate -- not necessarily that he would be able to collect from the Trust. And the fact that Michaeles agreed to the consent judgment in his capacity as personal representative of the estate and not as trustee of the Trust furthers the conclusion that he was not seeking to waive any rights of the Trust.

C.   Certification of the Dispositive Question in the Reach and Apply Action

We turn to the matter that we certify.

The crux of Michaeles's argument on appeal is that the district court erred in its core legal holding that De Prins is entitled under Massachusetts law to reach and apply the irrevocable trust assets to satisfy the wrongful death judgment. This argument turns on whether in these circumstances, under state common law and state statutes, a self-settled spendthrift irrevocable trust which provided for unlimited distributions to the settlor during his lifetime (and to no one else) protects assets in the trust from a reach and apply action by the settlor's creditors after the settlor's death. Massachusetts law has not resolved this question.

Under Massachusetts case law, a self-settled spendthrift trust does not protect assets from the settlor's creditors to the extent that the settlor retains use and control of the funds. Ware v. Gulda, 117 N.E.2d 137, 138 (Mass. 1954); Restatement (Second) of Trusts § 156(1), (2) (Am. Law Inst. 1959).[2] And where, "[d]uring his lifetime," the self-settlor of a revocable trust "enjoyed all the indicia of ownership of the property he placed in the trust" by being "settlor, trustee, and sole beneficiary . . ., the successor trustees hold the trust property subject to the claims of creditors." Nile v. Nile, 734 N.E.2d 1153, 1158 (Mass. 2000) (characterizing the holding of State St. Bank & Tr. Co. v. Reiser, 389 N.E.2d 768 (Mass. App. Ct. 1979)).

An aspect of the State Street rule approved in Nile now appears to be codified at Mass. Gen. Laws ch. 203E, § 505(a)(3), which provides that "[a]fter the death of a settlor, . . . the property of a trust that was revocable at the settlor's death shall be subject to claims of the settlor's creditors," even despite a spendthrift clause. See 2012 Mass. Acts 140 (2012).

But, as Michaeles points out, the statute does not resolve the question as to an irrevocable spendthrift trust.

---

[2] While we recognize the Restatement (Third) of Trusts (Am. Law Inst. 2003) may have some relevance to this issue, neither party has argued to us that it makes any material change for the purpose of this case.

Indeed, another section of the same statute provides that, "[w]ith respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit." Mass. Gen. Laws ch. 203E, § 505(a)(2). Michaeles argues that, because no trust assets may be distributed for Belanger's benefit after his death, De Prins cannot reach any trust assets. But this statute does not, by its terms, expressly address the question.[3]

De Prins urges that this case is governed by Calhoun v. Rawlins, 106 N.E.3d 684 (Mass. App. Ct. 2018), review denied, 480 Mass. 1110 (2018). In that case, the settlor-beneficiary of an irrevocable spendthrift trust caused a car accident that killed him and injured two others, who then sued to recover for the injuries. Id. at 688. But, although the court held that the plaintiffs could reach the assets of the trust, it did not address the effect of the defendant's death. Rather, the issue on appeal was whether the trust was self-settled. Id. at 688-93. Further, it is a decision of Massachusetts's intermediate appellate court and not the SJC. See United States v. Tavares, 843 F.3d 1, 14

_____

[3] De Prins argues that Michaeles waived any argument related to Mass. Gen. Laws ch. 203E, § 505 by not making it to the district court. Not so. Michaeles clearly argued that Massachusetts law bars De Prins's action because Belanger's interest in the Trust assets ended when he died. He offers the statute for its consistency with that proposition. Given that the statute does not by its terms bar De Prins's action, Michaeles did not waive the argument.

(1st Cir. 2016) ("We are not bound by a decision of a state intermediate appellate court . . . .").

As we have just explained, Massachusetts law does not clearly answer the question upon which the disposition of this case depends.  Although neither party requested certification, neither party objected to it when asked at oral argument.[4]  In any event, "'we have the discretion to certify questions to the SJC sua sponte.'"  Phillips v. Equity Residential Mgmt., L.L.C., 844 F.3d 1, 4 n.7 (1st Cir. 2016) (quoting Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 n.4 (1st Cir. 2013)); Mass. S.J.C. R. 1:03.  "[C]ertification is particularly appropriate here since the answers to these questions may hinge on policy judgments best left to the Massachusetts court and will certainly have implications beyond these parties."  Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008); accord Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 142 (1st Cir. 2017).  For these reasons, "we exercise our discretion in favor of certification."  GGNSC Admin. Servs., LLC v. Schrader, 917 F.3d 20, 25 (1st Cir. 2019).

We thus certify the following question to the Massachusetts SJC:

---

4    In Rule 28(j) letters submitted after argument at the court's request, De Prins conceded that no SJC decision is controlling, while Michaeles deemed that a "close question."

- 12 -

> On the undisputed facts of this record, does a self-settled spendthrift irrevocable trust that is governed by Massachusetts law and allowed unlimited distributions to the settlor during his lifetime protect assets in the irrevocable trust from a reach and apply action by the settlor's creditors after the settlor's death?

We also welcome any other observation about Massachusetts law that the SJC considers relevant.

### III.

We direct the Clerk of this court to forward to the Massachusetts SJC, under this court's official seal, a copy of the certified question and this opinion, along with a copy of the parties' briefs and appendix, which set forth all facts relevant to the issue certified. We retain jurisdiction pending that court's determination.